SHELL OIL COMPANY, Petitioner,

v.

FEDERAL POWER COMMISSION, Respondent.

No. 75–3593.

United States Court of Appeals, Fifth Circuit.

May 24, 1976.

Rehearing Denied July 23, 1976.

See 535 F.2d 957.

Thomas G. Johnson, William G. Riddoch, Houston, Tex., for petitioner.

Martin N. Erck, Houston, Tex., R. Gordon Gooch, John P. Mathis, Randolph Q. McManus, Washington, D. C., for Exxon Corp.

Carroll L. Gilliam, Keith R. McCrea, Washington, D. C., for Gulf Oil Corp.

John J. Lahey, Drexel D. Journey, Gen. Counsel, Allan Abbot Tuttle, Sol., FPC, Washington, D. C., for respondent.

Before THORNBERRY, COLEMAN and MORGAN, Circuit Judges.

THORNBERRY, Circuit Judge:

Shell Oil Company has appealed from an order of the Federal Power Commission,

issued on September 26, 1975, denying Shell's application for rehearing, and rejecting its notice of rate increase filing under § 4 of the Natural Gas Act, 15 U.S.C. § 717c. Exxon Corporation intervened because it has a similar case pending before the Commission.

In October of 1966, Shell Oil Company entered into a "warranty" contract with Southern Natural Gas Company for the sale of gas from certain fields owned by Shell. The fields in question were in an early stage of development at the time that the contract was entered into, but Shell believed that they contained 500 to 700 billion cubic feet of recoverable natural gas. Since Southern Natural did not have a pipeline in the vicinity, it required a warranty from Shell that reserves of at least 500 billion cubic feet would be available for sale. Southern Natural felt that since Shell's fields were in an early stage of development, such a warranty was necessary to insure a return on its investment. The contract established a price of nineteen cents per Mcf with a fixed one cent escalation every five years.

In December of 1966 Southern Natural filed an application with the Commission to obtain a certificate to construct a line connecting Shell's fields to its system. Evidently, this proceeding became somewhat complicated when Philadelphia Gas Works and the Public Service Commission of New York intervened. Because of the delay, and the fact that gas was being flared, Shell requested a temporary certificate from the Commission so that Southern Natural could begin constructing the pipeline as soon as possible. A temporary certificate was granted on March 24, 1967, and Shell's contract with Southern Natural was filed as a rate schedule.[1]

Since the Natural Gas Act prohibits natural gas companies from selling or transporting gas in interstate commerce without having first obtained a certificate of public convenience and necessity from the Commission, Shell immediately applied for a certificate under § 7 of the Natural Gas Act. 15 U.S.C. § 717f. On July 16, 1971, the Commission promulgated Opinion No. 598, 46 F.P.C. 86, 46 F.P.C. 633 (1971); *affirmed, Placid Oil Co. v. FPC,* 483 F.2d 880 (5 Cir. 1973), withdrawing the rates set forth in Opinion No. 546,[2] 40 F.P.C. 530 (1968); *affirmed with qualifications, Austral Oil Co. v. FPC,* 428 F.2d 407 (5 Cir. 1970), *cert. denied, Municipal Distributors Group v. FPC,* 400 U.S. 950, 91 S.Ct. 241, 27 L.Ed.2d 257 (1970), and establishing a ceiling rate of twenty-six cents per Mcf. Opinion No. 598 also listed a large number of pending certificate applications under § 7(c) of the Act, including Shell's application; however, none of the applications listed as pending were granted in this opinion. Since the Commission's Opinion No. 598 neglected to issue a large number of permanent certificate applications which were outstanding, Opinion No. 598–A was issued. Opinion No. 598–A granted certificate applications listed as pending before the Commission in the appendix of Opinion No. 598.[3]

On March 27, 1974, approximately two and a half years after the issuance of its

---

1. The temporary certificate contained the following price condition: "The total price for such service shall be 19.0 cents per Mcf at 15.025 psia, subject to Shell Oil Company refunding to Southern Natural Gas Company, with interest at 7% per annum, any amounts collected from the date of initial delivery in excess of the higher of: (a) the rate finally determined to be required by the public convenience and necessity in Docket No. CI67–808, or (b) a rate of 16.5 cents per Mcf at 15.025 psia proportionately adjusted to reflect the Btu content below 1,000 Btu per cubic foot measured on a wet basis."

2. Opinion No. 546 was the first Southern Louisiana Area Rate decision. The rates established in this opinion were continuously subject to stay orders of the Commission and courts, and were never placed into effect.

3. "(15) Permanent certificates for applications pending as of November 1, 1970, as listed in Part V of Appendix B, are granted at the rates established in Opinion No. 598." 46 F.P.C. at 640.

certificate, Shell and Southern Natural entered into a contract amendment which dedicated two additional gas fields, and provided that Shell would receive the area or national ceiling rate provided by the Commission for additional reserves from new reservoirs discovered after March 27, 1974. This contract was filed with the Commission in April of 1974 and was "accepted for filing" with the proviso that its acceptance did not authorize any rate increases.

On July 14, 1975, Shell filed a notice of rate change under § 4 of the Natural Gas Act, 15 U.S.C. § 717c, for two newly discovered reservoirs. Shell felt that it was entitled to receive the gas rate in its amended contract with Southern Natural which was fixed by the Commission in the National Rate Proceeding for New Gas in Opinion Nos. 699, 51 F.P.C. 2212 (1974), and 699–H, 52 F.P.C. 263 (1974); *affirmed, Shell Oil Company v. F.P.C.,* 520 F.2d 1061 (5 Cir. 1975).[4] On August 1, 1975, the Commission rejected Shell's rate increase filing, stating that Shell was bound by the rates set forth in its original contract with Southern Natural because the issuance of Shell's permanent certificate of public convenience and necessity was conditioned upon the rates in its original contract. The Commission contends that Shell must file for its contractually authorized rate increase by means of a certificate amendment under § 7 of the Act. Shell, on the other hand, argues that it has an automatic right to the higher national rate and that the Commission has no discretion to reject its application because the requested rate is just and reasonable by definition.[5] Shell's application for rehear-

ing from the order rejecting its notice of rate increase was denied. This petition for review of the Commission's orders was filed on September 29, 1975.

Essentially two issues are raised in this appeal: (1) whether Shell's petition should be dismissed for failure to exhaust administrative remedies; and (2) whether Shell is entitled to file for a rate increase pursuant to § 4 of the Natural Gas Act without first obtaining an amendment of its certificate of public convenience and necessity incorporating the contract amendment which authorizes Shell to collect the national rate on its new wells.

I.

The essence of the Commission's exhaustion argument is that this court has no jurisdiction to entertain the instant appeal because Shell may proceed under § 7 of the Natural Gas Act, 15 U.S.C. § 717f, and seek amendment of its certificate of public convenience and necessity. If the certificate is amended, it is argued, Shell may then proceed under § 4 of the Natural Gas Act, 15 U.S.C. § 717c, and obtain the requested rate increase if it is not greater than the national rate which is currently in effect.

The applicable test for the reviewability of an order of the Commission is set forth in *Atlanta Gas Light Co. v. Federal Power Commission,* 476 F.2d 142 (5 Cir. 1973). "In general, the courts have declined to review non-final orders that are not 'definitive' in their impact upon the rights of the parties and do not threaten

---

**4.** Shell's notice of rate change requested an increase from the contract rate of 20 cents per Mcf to the newly established national rate of 51 cents per Mcf.

**5.** As previously mentioned, the Commission determined in Opinion Nos. 699, 51 F.P.C. 2212 (1974), and 699–H, 52 F.P.C. 263 (1974); *affirmed, Shell Oil Company v. F.P.C.,* 520 F.2d 1061 (5 Cir. 1975), that rates less than or equal to the national rate are just and reasonable. Prior to the area rate cases, gas companies had the burden of proving that requested rates were "just and reasonable". The Commission has abandoned this practice in favor of first an

area rate, *Permian Basin Area Rate Cases,* 390 U.S. 747, 88 S.Ct. 1344, 20 L.Ed.2d 312 (1968), and now a nation-wide rate approach. Opinion Nos. 699, 51 F.P.C. 2212 (1974), and 699–H, 52 F.P.C. 263 (1974); *affirmed, Shell Oil Company v. F.P.C.,* 520 F.2d 1061 (5 Cir. 1975). In this case, the Commission does not contend that the rate requested by Shell is not just and reasonable; its basic contention is that because of the nature of the contract between Shell and Southern Natural, Shell must obtain an amendment to its certificate of public convenience and necessity before proceeding under § 4 of the Act.

the petitioner with 'irreparable harm.'" 476 F.2d at 147. The court's opinion in this case goes on to conclude that the requirement of "irreparable harm" is redundant since ". . . an 'irreparable' injury, like the effect of a 'definitive' order, cannot be redeemed by subsequent official action." 476 F.2d at 147. Therefore, if Shell will suffer immediate and irreparable financial loss if the Commission's order is not reviewed, the Commission's order is reviewable under the test specified in *Atlanta Gas Light Company v. Federal Power Commission, supra.*

For the following reasons we are convinced that the instant order is reviewable under the test in *Atlanta Gas Light, supra.* As Shell points out, the Commission's powers under § 4(e) are strictly limited. The Commission may suspend rates filed by a gas company for a maximum statutory period of five months. At the expiration of five months the Commission must allow the rates to be collected, subject to refund if ultimately found unjust and unreasonable. On the other hand, if Shell were to proceed under § 7 of the Act, there would be no compulsion on the Commission to act on Shell's application to amend within a set time period. Any action ultimately taken would only be prospective, and revenues not collected in the meantime would be lost. We therefore feel that the Commission's order is definitive in its impact upon the rights of the parties and threatens irreparable harm if not reviewed by this court.

## II.

The Commission indicates that the basis for its rejection of Shell's requested rate increase was that Shell's contract with Southern Natural was a "warranty" contract[6] upon which the issuance of its original certificate of public convenience and necessity was predicated. In addition to the warranty to deliver a specific amount of gas, the Commission contends that Shell warranted to provide the gas at the rates set forth in the contract. The Commission seems to feel that since the contract contained these warranties, the certificate of public convenience and necessity which was issued to Shell in Opinion No. 598–A, *supra,* was conditioned upon the pricing terms contained in the contract. As a result, the Commission reasons that Shell must obtain an amendment of its certificate under § 7 before it may file for a rate increase under § 4.

The essence of Shell's position is that (1) its permanent certificate of public convenience and necessity is not conditioned upon the rates set forth in the original contract with Southern Natural and that it is therefore not necessary to obtain an amended certificate before requesting a rate increase; and (2) the fact that its contract with Southern Natural contains a warranty to have a specific quantity of gas available for sale does not affect the price provisions of the contract or the right to file for a rate increase.

Although Shell concedes that the Commission has the power to impose price conditions when it issues a permanent certificate, *Atlantic Refining Company v. Public Service Commission of New York*, 360 U.S. 378, 79 S.Ct. 1246, 3 L.Ed.2d 1312 (1959), it contends that its permanent certificate does not contain any such condition. We agree. As previously mentioned, Shell's certificate was granted in Opinion No. 598–A along with a number of other certificates. Opinion No. 598–A contains the following language:

> Permanent certificates for application pending as of November 1, 1970, as listed in Part V of Appendix B, are granted at the rates established in Opinion No. 598.

46 F.P.C. at 640. If anything, Shell's certificate appears to specifically authorize the rates set forth in Opinion No. 598.

---

6. Under a "conventional" sales contract, a producer promises to sell all the gas produced from either specific wells or specific fields. In a "warranty" contract, the producer agrees to sell a specific amount of gas. Usually, the gas delivered in satisfaction of this obligation may come from fields or sources outside of the designated fields.

The Commission also relies upon this court's decision in *Mitchell Energy Corp. v. F.P.C.*, 519 F.2d 36 (5 Cir. 1975), as authority for their rejection of Shell's rate increase filing under § 4. In *Mitchell* the Commission's rejection of Mitchell's proposed rate increase was upheld because Mitchell agreed in its contract, as approved in the context of its special relief application, not to seek any additional increases in its rate for new gas until December of 1977. Previously, the Commission had granted Mitchell special relief to the area rate structure in Opinion No. 649. Opinion No. 649 allowed Mitchell to sell its gas at rates in excess of the applicable area rate. In view of the unique terms of Mitchell's original contract and the special relief granted in Opinion No. 649, the court held that Mitchell was bound by the terms of its original contract and no amendment which provided for an escalation of rates would be permitted until 1977. Shell contends, and we think correctly, that *Mitchell* may be distinguished from the case at hand. The decision to reject Mitchell's proposed rate increase was based on the fact that Mitchell had previously received special permission to collect more than the applicable area rate. In return for receiving special relief, Mitchell promised not to file for a rate increase until 1977. In the instant case, Shell made no request for special relief and has never agreed not to change the provisions of its original contract. The court in *Mitchell* even acknowledged that, ". . . a natural gas producer has an absolute right to file a proposed rate increase, subject to any effective rules or orders of the Commission, so long as the increase is contractually authorized." 519 F.2d at 41, *citing United Gas Pipe Line Co. v. Mobil Gas Corp.*, 350 U.S. 332, 76 S.Ct. 373, 100 L.Ed. 373 (1956).

We also fail to understand the importance that the Commission attaches to the fact that Shell's contract with Southern Natural contains a warranty to have a specific quantity of gas available for sale.

In this regard, the Commission relies upon its decision in *Gulf Oil Corp.*, 51 F.P.C. 1340 (1974). Gulf guaranteed the availability of a specific quantity of gas at a certain price. An application was filed with the Commission to amend Gulf's certificate of public convenience and necessity because it could not meet its certificated obligations. The Commission held that Gulf was bound by the terms of its contract and refused to amend its certificate. For the following reasons we feel that *Gulf Oil Corp., supra*, is inapplicable to the case at hand. First of all, *Gulf* involved a proceeding instituted under § 7, while Shell filed for a rate increase under § 4 of the Act. Gulf instituted a proceeding to amend its certificate under § 7, as opposed to § 4, because the issuance of its certificate was conditioned upon the price in its contract. In the instant case, the issuance of Shell's certificate was not predicated upon such a condition. Second, Gulf's initial certificate was granted in an individual proceeding, *Gulf Oil Corp.*, 30 F.P.C. 1559 (1963), while Shell's original certificate was granted along with several other pending applications in Opinion No. 598–A, 46 F.P.C. 633 (1971). The certificate issued to Gulf took into consideration the warranty to provide a specific quantity of gas at a certain price:

> The proposed sale by Gulf guarantees the availability of a substantial quantity of gas at a price, which when taken at a high load factor rate is in the public interest.

30 F.P.C. at 1563. We could find nothing in Shell's original certificate which indicates that it is conditioned upon the rate schedule set forth in the original contract with Southern Natural. Third, Gulf's proceeding instituted under § 7 was, in essence, a plea for equitable reformation of its contract. Shell seeks no deliverance from its warranty obligations under its contract with Southern Natural.

The purpose of § 4 of the Natural Gas Act is to encourage pricing based on private contracts. *Permian Basin Area Rate Cases*, 390 U.S. 747, 784, 88 S.Ct. 1344, 1368–69, 20 L.Ed.2d 312, 345–46 (1968). We can find nothing in § 4 or the cases cited by the

Commission which is authority for the proposition that the parties to a contract for the sale of natural gas must amend their certificate of public convenience and necessity under § 7 of the Natural Gas Act before filing for a rate increase under § 4, unless the issuance of their certificate was conditioned upon a specific price. *Atlantic Refining Co. v. Public Service Commission of New York, supra; United Gas Improvement Co. v. Callery Properties, Inc.,* 382 U.S. 223, 226, 86 S.Ct. 360, 362–63, 15 L.Ed.2d 284, 287–88 (1965).

For the preceding reasons, we hold that the Federal Power Commission's rejection of Shell Oil Company's proposed rate increase under § 4 of the Natural Gas Act, 15 U.S.C. § 717c, was improper.

REVERSED AND REMANDED.